1
2
3
4
5
6
7

8      **IN THE UNITED STATES DISTRICT COURT**

9      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LORNA R. DORRELL,                    No. 2:13-CV-1227-CMK

12              Plaintiff,

13        vs.                             <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16
     _____/
17

18          Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-

23   motion for summary judgment (Doc. 20).

24   / / /

25   / / /

26   / / /

1

# I. PROCEDURAL HISTORY

Administrative Law Judge ("ALJ") Mark C. Ramsey recited the following relevant procedural in his April 25, 2011, decision :

> This case is before the undersigned Administrative Law Judge pursuant to a stipulation and proposed order of voluntary remand from the United States District Court for the Eastern District of California.[1]  The claimant appeared and testified at a hearing held on March 14, 2011, in Redding, CA. . . .
>
> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to reconsider the medical opinions including those of reviewing and examining physicians Drs. Jordan, Lang, and Xeller.  The ALJ must obtain vocational expert testimony.
>
> The claimant is alleging disability since May 16, 2002.

The ALJ concluded that plaintiff was not disabled through the date last insured based on the following relevant findings:

> 1. The claimant last met the insured status requirements on December 31, 2007;
>
> 2. Through the date last insured, the claimant has the following severe impairment(s): cervical degenerative disc disease, status post cervical fusion; mild right carpal/cubital tunnel syndrome; and chronic headaches;
>
> 3. Through the date last insured, the claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 4. Through the date last insured, the claimant has the following residual functional capacity: the claimant can perform light work; the claimant can occasionally lift/carry 20 pounds and frequently 10; she can stand/walk for six hours in an eight-hour workday; she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; she cannot overhead reach or lift bilaterally; she has no restrictions on left hand, but can occasionally finger and keyboard with her right hand; she cannot look down or up with her neck flexed continuously;
>
> 5. Through the date last insured, the claimant was capable of performing past relevant work as a nurse supervisor (DOT: 075.167-010); and

---

[1]     E. Dist. Cal. case no. 2:09-CV-0112-EFB.

6.    Alternatively, considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, through the date last insured, there were jobs that existed in significant numbers in the national economy that the claimant could perform.

After the Appeals Council declined review on April 17, 2013, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

# III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ erred in concluding that plaintiff's depression is non-severe; (2) the ALJ failed to provide reasons for rejecting medical opinions relating to limitations caused by plaintiff's headaches; (3) the ALJ erred in finding plaintiff's testimony not credible; (4) the ALJ failed to properly consider lay witness evidence; and (5) the ALJ erred by relying on vocational expert testimony which did not fully describe plaintiff's limitations.

### A.    Severity Finding

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]   In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

---

[2]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1           As to the severity of plaintiff's depression, the ALJ stated:

2           The claimant's medically determinable mental impairment of depression
    did not cause more than minimal limitation in the claimant's ability to
3       perform basic mental work activities and was therefore nonsevere.

4           In making this finding, the undersigned has considered the four broad
    functional areas set out in the disability regulations for evaluating mental
5       disorders. . .   These four broad functional areas are known as the
    "paragraph B" criteria.

6

7   Regarding activities of daily living, the ALJ stated:

8           . . .In this area, the claimant had mild restrictions.  The claimant reported
    that she spends her mornings reading the newspaper, drinking coffee, and
9       making sure the children are up and ready for school.  She checks on her
    mother, makes sure her mother is up and has taken her medicine, goes
10      outside and waters her plants.  She picks up the house, washes clothes,
    goes grocery shopping, talks with her mother, plants flowers, calls her
11      sister, makes sure her children do homework, and cooks.  (Ex. 11F/7).
    She reported no problem with her personal hygiene or grooming.  (Ex.
12      2E/2).  She helps to care for animals.  (Ex. 2E/2).  She goes outside five to
    six times per day.  (Ex. 2E/4).  She reported shopping 2-5 times a week for
13      1-1.5 hours.  (Ex. 2E/4).  Her hobbies include gardening, plants, antiques,
    crossword puzzles, light reading, and computer stuff.  (Ex. 2E/5).

14

15  Regarding social functioning, the ALJ stated:

16          . . .In this area, the claimant had mild difficulties.  She had many good
    friendships with people at work.  She has become more isolated in the last
17      6-7 months, but in general, she likes people.  (Ex. 13F/13).  She reported
    no problems getting along with co-workers.  (Ex. 7F/2).  She gets along
18      fine with family, relatives, friends, and neighbors.  (Ex. 7F/3).  She
    reported getting 2-3 phone calls a day.  (Ex. 2E/1).  She visits family 1-2
19      times per week.  (Ex. 2E/5).

20  As to concentration, persistence, and pace, the ALJ stated:

21          . . . In this area, the claimant had mild limitation.  She is able to drive.  She
    can pay bills, handle a savings account, count change, and use a
22      checkbook.  (Ex. 2E/4).  Moreover, her sister reported that she has no
    difficulty following written or verbal instructions.  (Ex. 7F/1).

23

24  / / /

25  / / /

26  / / /

1   Finally, as to episodes of decompensation, the ALJ noted:

2           . . . In this area, the claimant has experienced no episodes of
            decompensation, which have been of extended duration.  The claimant has
3           never been admitted to a psychiatric hospital and has not had any
            outpatient psychiatric treatment or counseling.  (Ex. 7F/1).
4

5   The ALJ concluded that plaintiff's depression was not severe given the presence of, at worst,

6   only mild limitations in some areas and no episodes of decompensation.

7           In challenging the ALJ's severity finding, plaintiff notes that numerous doctors

8   have diagnosed depression.  A diagnosis alone, however, does not indicate the severity of the

9   diagnosed impairment.  Plaintiff also cites to evidence indicating that plaintiff has crying spells

10  three or four times a day, as well as panic attacks.  Again, as with medical diagnoses, the mere

11  existence of crying spells and panic attacks, without more, does not indicate the severity of

12  plaintiff's mental impairment, particularly as it relates to work-related activity.  Most persuasive,

13  plaintiff does not cite to any medical source expressing the opinion that plaintiff's mental

14  impairment more than minimally affected her ability to work.  To the contrary, Drs. Richwerger,

15  Greils, Straehley, as well as the agency non-examining doctor all opined that plaintiff's mental

16  impairment was non-severe.

17          **B.    Evaluation of Medical Opinions**

18          The weight given to medical opinions depends in part on whether they are

19  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

20  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

21  professional, who has a greater opportunity to know and observe the patient as an individual,

22  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

23  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

24  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

25  (9th Cir. 1990).

26  / / /

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues that, in considering her headaches, the ALJ improperly rejected the opinion of Dr. Lang by giving the opinion "great weight" yet failing to discuss the doctor's opinion that plaintiff suffers from headaches which would cause her to miss a day of work "at least every one or two weeks."  As to Dr. Lang, the ALJ stated:

> The claimant underwent a consultative examination with Gilbert Lang, M.D., orthopedist in August 2004.  The claimant was 5'9" and 194 pounds. Dr. Lang opined that the claimant remains permanent and stationary.  The

1
2
3

> headaches are considered to be severe, at least for some period of time, at least every one or two weeks. . . . Dr. Lang's opinion is based on objective and subjective factors; however it is consistent that the claimant is capable of less than light work. . . Accordingly, Dr. Lang's opinion received great weight.

4   It should be noted that, according to Dr. Lang: "The headaches have no objective findings."

5   While the court agrees with plaintiff that the ALJ erred by silently disregarding

6   Dr. Lang's opinion that plaintiff's headaches are severe, any error is harmless.  The Ninth Circuit

7   has applied harmless error analysis in social security cases in a number of contexts.  For example,

8   in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that

9   the ALJ's failure to consider uncontradicted lay witness testimony could only be considered

10  harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a

11  different disability determination."  Id. at 1056; see also Robbins v. Social Security

12  Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).  Similarly, in

13  Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied

14  harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.

15  Specifically, the court held:

16
17
18
19
20

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

21

> Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

22  In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the

23  claimant's age and education.  The Ninth Circuit also considered harmless error in the context of

24  the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a

25  medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

26  / / /

1    The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d

2  1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court

3  stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility

4  finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless

5  error."  See id. at 1162.  The court articulated the difference between harmless error standards set

6  forth in Stout and Batson as follows:

7           . . . [T]he relevant inquiry [under the Batson standard] is not
        whether the ALJ would have made a different decision absent any error. . .
8        it is whether the ALJ's decision remains legally valid, despite such error.
        In Batson, we concluded that the ALJ erred in relying on one of several
9        reasons in support of an adverse credibility determination, but that such
        error did not affect the ALJ's decision, and therefore was harmless,
10       because the ALJ's remaining reasons *and ultimate credibility
        determination* were adequately supported by substantial evidence in the
11       record.  We never considered what the ALJ would do if directed to
        reassess credibility on remand – we focused on whether the error impacted
12       the *validity* of the ALJ's decision.  Likewise, in Stout, after surveying our
        precedent applying harmless error on social security cases, we concluded
13       that "in each case, the ALJ's error . . . was inconsequential to the *ultimate
        nondisability determination*."

14
           Our specific holding in Stout does require the court to consider
15       whether the ALJ would have made a different decision, but significantly,
        in that case the ALJ failed to provide *any reasons* for rejecting the
16       evidence at issue.  There was simply nothing in the record for the court to
        review to determine whether the ALJ's decision was adequately supported.

17

18  Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

19  Thus, where the ALJ's errs in not providing any reasons supporting a particular determination

20  (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is

21  harmless if no reasonable ALJ could have reached a different conclusion had the error not

22  occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is flawed

23  (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally

24  insufficient or unsupported by the record), the Batson standard applies and any error is harmless

25  if it is inconsequential to the ultimate decision because the ALJ's disability determination

26  nonetheless remains valid.

In this case, the ALJ appears to have silently disregarded Dr. Lang's opinion regarding the limiting effects of plaintiff's headaches.  Thus, the <u>Stout</u> standard applies and the error is harmless if no reasonable ALJ could reach a different conclusion upon a reasoned analysis of the doctor's opinion.  Applying this standard, the court finds the ALJ's error to be harmless.  Specifically, any reasonable ALJ who fully considered Dr. Lang's opinion would reject limitations associated with headaches given doctor's admission that there was no objective evidence to support the existence, let alone the limiting effects, of headaches.

### C.    Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See <u>id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See <u>id.</u>; see also <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that

> the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. <u>See</u> <u>Bunnell</u>, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." <u>See</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (quoting <u>Vertigan v. Heller</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)); <u>see also</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

1    claimant was entitled to benefits based on constant leg and back pain despite the claimant's

2    ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

3    activities are not easily transferable to what may be the more grueling environment of the

4    workplace, where it might be impossible to periodically rest or take medication").   Daily

5    activities must be such that they show that the claimant is ". . . able to spend a substantial part of

6    his day engaged in pursuits involving the performance of physical functions that are transferable

7    to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

8    before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

9    Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

10             As to plaintiff's credibility, the ALJ stated:

11             The claimant reported being injured in March 2002, then going on
                 modified duty and continuing to work 40 hours a week.  She reported that
12             the hospital only permitted modified duty for 60 days and then she went on
                 state disability.  (Ex. 1E/2).  This tends to suggest that if the hospital
13             would have permitted the claimant to work at modified duty then she
                 would have continued to work.  Moreover, in April 2004, the claimant
14             reported to Dr. Tate that since her mother was having significant health
                 problems, she is the primary caregiver because she is an RN.  (Ex. 3F/4).
15             This occurred after the claimant's initial injury [in Mach 2002]. . . .

16   The ALJ also noted: "Given the claimant's allegations of totally disabling symptoms including

17   vomiting, nausea, and photophobia, which occurs for up to 24 hours, twice a week, it appears

18   there is an exaggeration of symptoms and limitations."  The ALJ continued with observations on

19   plaintiff's course of treatment as follows:

20             Additionally, the claimant testified that she only receives chiropractic care
                 with massage and manipulation.  The claimant reported that chiropractic
21             treatment two to four times a month helps with massage of her arm and
                 thoracic adjustments.  (Ex. 11F/5).  The record contains significant gaps
22             where the claimant was not receiving chiropractic or any other medical
                 treatment.  Currently, she is not seeking any other form of treatment and
23             has not been treated by other practitioners. . . .

24   / / /

25   / / /

26   / / /

Finally, the ALJ noted other inconsistencies between plaintiff's allegations of total disability and the record:

> . . .She testified that she still changes the sheets on the bed, does laundry, does light sweeping, and grocery shops.  She testified that she had not done any yard work in the past two years, which is about two years after her date last insured.  During the relevant period of adjudication, the claimant has described daily activities, which are not limited to the extent one would expect, given the claims of disabling symptoms and limitations. . . .

The court finds no error.  While plaintiff argues that the ALJ overstated her daily activities, plaintiff does not address other areas of inconsistency noted by the ALJ.  For example, the ALJ observed that the record suggests that, had her former employer permitted her to continue to work on a modified schedule past 60 days following her March 2002 injury, plaintiff would have and, therefore, could have continued to work past her alleged onset of disability in May 2002.  This belies plaintiff's contention that she is totally disabled and has been since May 2002.  Similarly, the ALJ noted that, as reported to Dr. Tate, plaintiff was her mother's primary caregiver during a time period following the alleged onset date.  Again, this belies plaintiff's contention of total disability starting in May 2002.  Finally, the ALJ noted plaintiff's conservative course of treatment, consisting only of intermittent chiropractic care.

### D.   Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin.,

1  574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's

2  testimony, which was similar to the claimant's, for the same reasons given for rejection of the

3  claimant's complaints).

4  　　　　　　Regarding lay witness evidence provided by plaintiff's sister, Lyndia McBroome,

5  the ALJ stated:

6  　　　　　The undersign[ed] has read and considered the third party statement
   　　　　　submitted by Lyndia McBroome, claimant's sister.  Ms. McBroome
7  　　　　　reported seeing her sister 1-2 hours a week.  He reported that the claimant
   　　　　　is able to care for her sons, has no difficulty with personal hygiene or
8  　　　　　grooming, helps with the animals, cooks, and complete[s] light
   　　　　　housework.  (Ex. 3E/1-3).  She shops, drives a car, can count change,
9  　　　　　handle a savings account, and use a checkbook.  (Ex. 3E/4).  She visits
   　　　　　with family and friends.  (Ex. 3E/5).  She changes positions for comfort
10 　　　　　and complains of loss of strength in hands, numbness, and tingling.  She
   　　　　　has no problems following written or verbal instructions.  (Ex. 3E/6).
11 　　　　　Since her injuries, she has days of melancholy.  (Ex. 3E/7).  This opinion
   　　　　　is not inconsistent with the medical evidence of record and supports that,
12 　　　　　although the claimant has some difficulties, she still is able to adequately
   　　　　　perform many activities.  However, the undersign[ed] notes that Ms.
13 　　　　　McBroome only saw her sister for a few hours a week.  Nonetheless, the
   　　　　　undersign[ed] has determined that the clamant is capable of a range of
14 　　　　　light work.

15 Plaintiff argues that, in concluding that Ms. McBroome's statements are consistent with the

16 finding of a residual functional capacity for a range of light work, the ALJ failed to "fully and

17 accurately summarize Ms. McBroome's statements regarding her sister's functional limitations."

18 According to plaintiff: "[T]aken in their entirety, Ms. McBroome's statements clearly depicted an

19 individual with good and bad days who was not capable of competitive work on a sustained basis

20 at any exertional level."  While plaintiff does not cite specific instances where the ALJ's

21 summary mischaracterizes the evidence, she provides the following excerpt from Ms.

22 McBroome's statement:

23 　　　　　　It has been difficult to witness the losses Lorna has suffered due to
   　　　　　her injuries, physical, financial, and emotional.  I believe the most
24 　　　　　significant loss is her inability to practice as a registered nurse.  She had
   　　　　　over twenty years of experience at the acute hospital. . . .  She was an asset
25 　　　　　to the hospital, a true patient advocate, role model, and mentor.  It is truly
   　　　　　a loss to patients, as well as the community that she is no longer able to
26 　　　　　practice.

1    I miss the active, vibrant woman she was before the injuries.  She
2    now has days of melancholy that she must work out of. . . .

3        Having reviewed Ms. McBroome's statement in its entirety, the court finds no

4    instances where the ALJ mischaracterized the evidence, and plaintiff does not cite to any.

5    Moreover, the excerpted portion of Ms. McBroome's statement plaintiff does cite is not

6    inconsistent with the ALJ's summary or ultimate disability finding.  While Ms. McBroome states

7    her opinion that plaintiff is no longer able to perform her past relevant work as a nurse, that issue

8    is a legal issue reserved to the ALJ.  Further, though Ms. McBroome states that plaintiff is no

9    longer the active and vibrant person she once was, such a person is not necessarily precluded

10   from employment.  Similarly, feelings of melancholy do not necessarily preclude work.

11       Plaintiff's focus on the portions of Ms. McBroome's statements which were not

12   included in the ALJ summary misses sight of those portions of the ALJ's summary which show

13   that plaintiff is capable of a range of light work, such as plaintiff's ability to care for her sons,

14   care for herself, care for animals, cook, clean, shop, drive, handle money, interact with friends,

15   and follow written and verbal instructions – all despite inactivity, lack of vibrance, and feelings

16   of melancholy.

17       **E.    Vocational Expert Testimony**

18       The ALJ may meet his burden under step five of the sequential analysis by

19   propounding to a vocational expert hypothetical questions based on medical assumptions,

20   supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.

21   Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational

22   Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the

23   ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

24   1341 (9th Cir. 1988).

25   / / /

26   / / /

1    Hypothetical questions posed to a vocational expert must set out all the

2  substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

3  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

4  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

5  has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

6  the ALJ may pose to the expert a range of hypothetical questions based on alternate

7  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

8  determination must be supported by substantial evidence in the record as a whole.  See Embrey v.

9  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

10    Building upon her previous arguments, plaintiff argues that the ALJ erred by

11  relying on answers to hypothetical questions which did not accurately reflect the limiting effects

12  of plaintiff's headaches.  Specifically, plaintiff concludes that, had Dr. Lang's assessment been

13  accepted, she would be considered disabled.  As discussed above, however, the court finds that

14  any error with respect to Dr. Lang's assessment of plaintiff's headaches is harmless.

15                              **IV.  CONCLUSION**

16    Based on the foregoing, the court concludes that the Commissioner's final

17  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

18  ORDERED that:

19    1.    Plaintiff's motion for summary judgment (Doc. 18) is denied;

20    2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

21    3.    The Clerk of the Court is directed to enter judgment and close this file.

22

23  DATED:  September 30, 2014

24                                          _____
                                            **CRAIG M. KELLISON**
25                                          UNITED STATES MAGISTRATE JUDGE

26